[Cite as *State v. Benson*, 2025-Ohio-2336.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO.  C-240369 |
| | | TRIAL NO.    B-1701853 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| BRIANA BENSON, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/2/2025 per order of the court.**

**By:**_____
       **Administrative Judge**

[Cite as *State v. Benson*, 2025-Ohio-2336.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240369 |
| | | TRIAL NO. B-1701853 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| BRIANA BENSON, | : | *O P I N I O N* |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 2, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Santen & Hughes, LPA,* and *H. Louis Sirkin*, for Defendant-Appellant.

CROUSE, Judge.

{¶1} In 2018, defendant-appellant Briana Benson was convicted upon jury verdicts of felony murder and failing to stop after an accident in connection with the tragic death of M.H. Following her convictions, she timely filed a R.C. 2953.21 petition for postconviction relief challenging her conviction for murder, in which she alleged ineffective assistance of trial counsel. The common pleas court denied Ms. Benson's petition after an evidentiary hearing, and Ms. Benson now appeals.

{¶2} Because Ms. Benson did not demonstrate prejudice from her trial counsel's deficient performance, we cannot say that the common pleas court abused its discretion in denying her petition. Accordingly, we affirm the lower court's judgment.

## I. Background

{¶3} At Ms. Benson's jury trial, witness testimony and substantial video footage (from surveillance cameras in the area) were presented to detail the events leading up to the victim's death. That evidence demonstrated that in the early morning hours of March 26, 2017, Ms. Benson and her friend Jasmine Sloane drove from the Northside neighborhood of Cincinnati to downtown on Plum Street to meet Ms. Benson's sister, Myah, and Myah's friends. Myah had called Ms. Benson requesting her help with a feud that Myah was having with a former friend, Anna. Upon arriving downtown, Ms. Benson, Ms. Sloane, Myah, and Myah's friends got into Myah's car, and Ms. Benson began driving around the streets of Cincinnati.

{¶4} As Ms. Benson's group approached the intersection of Walnut and Seventh Streets, they saw a group of pedestrians that included Anna and the victim, M.H. Anna, recognizing Myah's car, ran toward it as the car turned right onto Walnut Street. Everyone got out of Myah's car, and a violent fight ensued between the two

groups of women. During this altercation, Ms. Benson and the victim directly fought each other, with Ms. Benson at one point dragging the victim by her hair and stomping on her face. The fight eventually ceased, and before getting back into Myah's car, Ms. Sloane collected items off the ground that had fallen during the fight, including what she later learned were the victim's car keys.

{¶5} Within ten minutes of the fight ending, Ms. Benson drove Myah and her friends back to Plum Street and directed Myah to drive home. Ms. Benson and Ms. Sloane returned to her car, but instead of driving back to Northside, Ms. Benson drove back to the scene of the fight. M.H., who was still in the area, saw Ms. Benson driving up Seventh Street and ran after the car, shouting. Ms. Benson turned right onto Walnut Street and stopped in the middle lane, and M.H. ran to the car, presumably in an attempt to retrieve her car keys.

{¶6} Once M.H. reached Ms. Benson's car, she banged on the rear passenger-side with her hands. In response, Ms. Benson put the car in reverse and backed up. M.H. ran back to the sidewalk but continued yelling. M.H. again ran to the car, at which time Ms. Benson backed up a second time. At this point, M.H. was banging on the hood of the car near the passenger side and her feet were close to the front passenger-side tire. Ms. Benson's car jolted forward, ran over M.H., and dragged her approximately 88 feet before she was released from underneath the car. Ms. Benson did not stop the car but continued driving away. M.H. died because of the trauma sustained during this incident.

{¶7} Ms. Benson's defense at trial was that the collision was a tragic accident, and she did not intentionally assault the victim. Shortly after the incident, Ms. Benson, after speaking with her mother, went to the police station to report the collision. Unaware that the events had been captured on surveillance cameras as well as a

camera attached to an Uber driver's car, Ms. Benson claimed in her recorded interview with police that she was unsure if she had hit the victim. She said that she only drove off after she saw the victim get up and saw the victim's friends approaching. She said that she drove off because she was afraid that the victim's friends were going to start another fight. Finally, she explained that she was unfamiliar with the one-way streets downtown and was lost, which was why she had happened upon the victim for a second time that night. Ms. Benson did not testify at trial, but this interview was played for the jury.

{¶8}   The State's certified accident-reconstruction expert, Police Officer Jon Halusek, testified at trial, "In reviewing the [Uber] video . . . if you watch the vehicle, you'll see the front tires turn to the right . . . and strike the individual. So, in that, you know, it became clear to us that it was an intentional act when she turned to the right to strike her."

{¶9}   The defense's witness, Paul Jahn, who is an owner of a firm that offers litigation support services, created a compilation video of the extensive surveillance video evidence in this case, which included typed notes over some of the frames. This compilation was admitted at trial as Defense Exhibit F and the section of the video entitled "Second Uber Car Video Notes" was played for the jury during Mr. Jahn's testimony. Mr. Jahn testified, "The second time the vehicle backs up, which you can see pretty clearly from the Uber video, the wheels would be cut to the right as though you're making a right turn . . . [she] back[ed] up with the wheels cocked to the right." When asked why he included an "electronic still shot" of the scene from the video, he explained it was to show "where the wheels were, and where [the victim's] feet were" before the car pulled forward. Defense counsel then asked the significance of that, and the State objected, arguing that Mr. Jahn was not an expert in accident reconstruction

but a videographer. The trial court sustained the objection, and defense counsel did not proffer Mr. Jahn's testimony.

**{¶10}** The jury ultimately acquitted Ms. Benson of purposeful murder in violation of R.C. 2903.02(A) but found her guilty of failing to stop after an accident in violation of R.C. 4549.02(A)(1) and felony murder based on the underlying offense of felonious assault in violation of R.C. 2903.02(B). The trial court imposed a prison term of 18 years to life.

**{¶11}** This court affirmed her convictions on direct appeal, overruling, in relevant part, Ms. Benson's challenge to the admission of expert testimony by Officer Halusek. *State v. Benson*, 2019-Ohio-3255 (1st Dist.). Although we determined that the trial court had improperly admitted the officer's opinion testimony on the ultimate issue at trial, i.e., whether Ms. Benson had intentionally turned her tires to the right prior to striking the victim, we held the error was harmless considering the overwhelming, other admissible evidence at trial. *Id.* at ¶ 10.

## II.    *Postconviction Proceeding*

**{¶12}** In her petition for postconviction relief, Ms. Benson challenges her conviction for felony murder, alleging she was denied the effective assistance of counsel. She claims her attorney failed to properly qualify Mr. Jahn as an expert who could have provided an opinion regarding the movement of the front tires prior to the collision. In support of her petition, she submitted Mr. Jahn's curriculum vitae, which demonstrated that he has been trained in video techniques for accident reconstruction and has previously testified as an expert in the fields of video, photography, and computer imaging. She also submitted his deposition testimony that was taken after the trial.

**{¶13}** In his deposition, Mr. Jahn testified that if he had been allowed to testify

as an expert at trial, he would have used his video compilation to show that (1) the front tires of the car were turned to the right as a result of Ms. Benson reversing her car, and thus, when the car jolted forward, the tires were already pointed toward the victim, demonstrating that Ms. Benson did not intentionally turn the tires toward the victim prior to the collision; (2) as the Uber driver inches forward on Walnut Street while recording the collision, "you get more of a side view of that front wheel . . . [n]ot because the wheel is turning, because the camera vantage point is [slightly] changing"; (3) the victim's right foot is close to the tire—"almost under the tire"—preventing Ms. Benson from seeing the victim's foot; and (4) when the car drove over the victim's foot, this caused the wheels to turn further right.

**{¶14}** Following a hearing, the common pleas court concluded that although defense counsel's performance in failing to qualify Mr. Jahn as an expert was deficient, Ms. Benson was not prejudiced by this failure. The court found that the jury heard Mr. Jahn's testimony at trial that the front tires of Ms. Benson's car had already been turned toward the right (toward the victim) as a result of Ms. Benson reversing her car. The court also found that Mr. Jahn was an expert in video photography and computer imaging, not accident reconstruction. Thus, the court explained that the additional information he would have testified to as an expert in videography, e.g., the wheel turned more to the right after hitting the victim's foot, would have carried no weight and would not have assisted the jury in its determination as to whether Ms. Benson had knowingly struck the victim with her car. The court reasoned that the jury was able to review the video evidence itself, including defendant's Exhibit F, which

was Mr. Jahn's compilation of the video evidence that was admitted at trial.[1]

**{¶15}** Finally, the lower court noted that even if Mr. Jahn's postconviction testimony had been heard by the jury, it would not have changed the result of the proceedings given the other evidence of guilt presented at trial. The court noted that (1) Ms. Benson returned to the scene of the fighting, and that her claim that it was because she did not know where she was going was countered by her friend's testimony that Ms. Benson used to live downtown; (2) Ms. Benson turned onto Walnut Street and stopped instead of driving away; and (3) when the victim left Ms. Benson's car and returned to the sidewalk, Ms. Benson again did not drive away. Additionally, the lower court noted that this court, in Ms. Benson's direct appeal, had stated that Ms. Benson's credibility was damaged, given that the video evidence differed from her statements to police. In her recorded interview, Ms. Benson said that she had been unsure if she had hit the victim, even though Ms. Sloane testified that she had told Ms. Benson to stop because they had hit the victim. And Ms. Benson's statements that she saw the victim "get up" before she was driving away was refuted by the video evidence.

**{¶16}** Ms. Benson now appeals.

### III.    Analysis

**{¶17}** In her sole assignment of error, Ms. Benson contends that the trial court abused its discretion in denying her petition for postconviction relief.

**{¶18}** We review the denial of a timely-filed petition for postconviction relief for an abuse of discretion. *State v. Hardman*, 2022-Ohio-3309, ¶ 11 (1st Dist.), citing *State v. Gondor*, 2006-Ohio-6679, ¶ 58. An abuse of discretion occurs when a trial

---

[1] Attached to Ms. Benson's petition was a disc containing Mr. Jahn's compilation of the video evidence, including his typed notes over certain frames. Ms. Benson claims that this was a different compilation video than "Defendant's Exhibit F" admitted at trial. The common pleas court reviewed both videos and determined that they were the same. After our review of both videos, we agree that there is no noticeable difference.

court exercises its discretion in an unwarranted way, *see Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35, or its decision is unreasonable or arbitrary, *see Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Where a trial court has denied a petition following an evidentiary hearing, we give deference to the court's findings of fact. *Gondor* at ¶ 47-48.

**{¶19}** To prevail on her claim of ineffective assistance of trial counsel, Ms. Benson must demonstrate that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). Because neither party disputes that trial counsel rendered deficient performance, we only consider whether Ms. Benson demonstrated that she was prejudiced by her counsel's failure to qualify Mr. Jahn as an expert.

**{¶20}** The prejudice prong of *Strickland* requires that Ms. Benson show that defense counsel's errors were so serious that she was deprived of a fair trial. *See Strickland* at 685, 689. A defense counsel's error, even if professionally unreasonable, does not warrant setting aside a criminal judgment if the error did not affect the judgment. *Bradley* at 142. To reverse the judgment, Ms. Benson must show there exists a reasonable probability that, but for her counsel's errors, the result of the trial would have been different. *Id.* A reasonable probability is sufficient to undermine confidence in the trial's outcome. *Id.* Therefore, we must consider the totality of the evidence before the lower court. *Id.* at 143. Notably, a verdict that was strongly supported by record evidence is less likely to have been affected by counsel's errors. *Id.*

**{¶21}** Ms. Benson claims her trial was fundamentally unfair because of her counsel's failure to qualify Mr. Jahn as an expert, which left the testimony of Officer

Halusek effectively unchallenged. Additionally, she asserts that this prejudice was compounded by the fact that, at trial, Officer Halusek was erroneously permitted to testify to the "ultimate issue"—whether Ms. Benson intentionally turned her wheels toward the victim.

**{¶22}** The lower court determined that there was no prejudice to Ms. Benson from her counsel's failure to qualify Mr. Jahn as an expert and failure to proffer his testimony for two key reasons. First, Mr. Jahn's testimony that Ms. Benson did not intentionally turn her tires towards the victim prior to the collision would have been inadmissible because it was improper opinion testimony on the ultimate issue. Second, Mr. Jahn's testimony would not have assisted the jury, who were able to watch the videos and use their common knowledge to interpret the videos on their own. The common pleas court found that Mr. Jahn's testimony "paled in comparison" to the overwhelming other evidence of Ms. Benson's guilt. We agree.

**{¶23}** In Ms. Benson's direct appeal, we determined that the admission of Officer Halusek's opinion on the ultimate issue was harmless error. While Officer Halusek should not have been allowed to offer his opinion that Ms. Benson intentionally struck M.H., the error was harmless "in light of the wealth of other, admissible evidence." *Benson*, 2019-Ohio-3255, at ¶ 10 (1st Dist.). Since Officer Halusek's testimony was inadmissible, Mr. Jahn's testimony as to Ms. Benson's intent would likewise have been inadmissible.

**{¶24}** Further, and more importantly, it is unclear how Mr. Jahn's postconviction testimony would have effectively challenged the State's expert-witness testimony. Mr. Jahn is not an expert in accident reconstruction, but an expert in computer imaging and videography. Mr. Jahn's testimony could not have offered the jury any information beyond describing what was already visible in the compilation

video, which was admitted as Defense Exhibit F and played for the jury. Additionally, the jury heard Mr. Jahn's testimony that Ms. Benson's tires were already turned to the right after she reversed her vehicle. Since the jury heard testimony from Mr. Jahn (and the Uber driver) that Ms. Benson's front tires were already turned to the right, Mr. Jahn's postconviction testimony does not provide any additional information that could have assisted the jury in its decision.

{¶25} Here, the verdict was less likely to have been impacted by trial error since it was so strongly supported by a wealth of video and eyewitness evidence. The jury's ability to watch the entire scene as it unfolded through the videos carries significant weight. The jury could witness the position of M.H.'s foot in front of the vehicle, that the perspective of the Uber driver's video changed as he moved his own vehicle forward, and, most importantly, that Ms. Benson's tires were already turned to the right from when she had reversed the car. Even if the jury had heard Mr. Jahn's postconviction testimony, there is not a reasonable probability that it would have changed the result of the proceedings, given the abundance of other evidence of guilt presented at trial.

{¶26} Ms. Benson has not demonstrated that, but for her trial counsel's error, there is a reasonable probability that the outcome of the proceedings would have been different. Considering the lower court's thorough analysis of the evidence, we cannot say the court abused its discretion in denying Ms. Benson's postconviction petition. Accordingly, we overrule Ms. Benson's single assignment of error.

### IV. Conclusion

{¶27} Having overruled the single assignment of error, we affirm the common pleas court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **NESTOR, J.,** concur.